**SO ORDERED.**

**SIGNED this 16th day of May, 2014.**



_Lena Mansori James_
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| PAMELA C. RUTLEDGE, | ) | Case No. 12-51625 |
| | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| PAMELA C. RUTLEDGE | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 13-06037 |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

THIS MATTER came before the Court for hearing on March 20, 2014, after due and proper notice, upon the Motion to Dismiss (the "Motion to Dismiss") filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") to dismiss this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Appearing before the Court were John Lawson and

Keith Clayton, counsel for Pamela C. Rutledge (the "Debtor"), and Christopher Jones and Julie Pape, counsel for Wells Fargo. Following the hearing, and upon consideration of the Motion to Dismiss, the memoranda of law in support thereof and in response thereto, and the arguments of counsel, and for the reasons that follow, the Court will grant the Motion to Dismiss in part and deny the Motion to Dismiss in part.

## I.  FACTS

The Debtor initiated an adversary proceeding by filing a Complaint Seeking Damages in Core Adversary Proceeding, Objecting to Proof of Claim, and to Determine the Secured Status and Validity or Amount of Secured Claim (the "Complaint") on May 22, 2013.  The following facts are as alleged in the Complaint and taken as true for the purposes of this motion:

The Debtor purchased residential property located at 5761 Davis Road, Walkertown, North Carolina, in January 2002.  In April 2004, the Debtor refinanced her property, executing a promissory note (the "Note") in the amount of $91,164.00 in favor of Greater Atlantic Mortgage Corporation. The Note provided for interest at the rate of 6.0% per annum, with principal and interest payments of $546.57 per month. The deed of trust securing the indebtedness (the "Deed of Trust") is recorded in Book 2470, Page 3611 in the Office of the Register of Deeds of Forsyth County.  The loan evidenced by the Note and Deed of Trust is insured by the Federal Housing Administration ("FHA").

Wells Fargo was the servicer and/or holder of the loan for the relevant time periods set forth in the Complaint. After health issues, the Debtor fell behind on her mortgage payments. She paid Wells Fargo $4,108.92 in June 2009 in reliance on the representation by Wells Fargo that her loan would then be current.  Despite this payment, the Debtor's next billing statement showed an amount due of $2,054.46.  Following the tender of this payment, the Debtor had two

emergency cardiac surgeries, one in July 2009 and one in September 2009. In March 2010, the Debtor entered into a loan modification agreement with Wells Fargo that reduced her monthly principal and interest payment, lowered her interest rate, and extended the maturity date of the loan to April 1, 2040. The modification agreement provided that the unpaid principal balance owed to Wells Fargo was $84,167.06. The modification stated that except as specifically provided, all other terms of the original Note and Deed of Trust remained unchanged.[1]

In November 2010, in response to a request by the Debtor for assistance with her mortgage, Wells Fargo verbally offered the Debtor a special forbearance agreement (the "Special Forbearance Agreement") to make six reduced payments of $372.00 from December 1, 2010 to May 1, 2011. The Debtor did not receive a copy of the Special Forbearance Agreement until her counsel requested a copy from Wells Fargo.[2] At the time the forbearance agreement was offered, the Debtor was four months in arrears and $2,023.81 past due on her mortgage. According to paragraph 2 of the Special Forbearance Agreement, the Debtor owed an estimated amount of $3,356.77 at the end of its term; however, the Debtor assumed any remaining delinquent balance would be added to the end of the term of her loan as a balloon payment. She asserts that if she had realized her loan would not be current at the end of the six months of the Special Forbearance Agreement, she would not have entered into the agreement.

---

[1] The terms "Note" and "Deed of Trust" as used herein refer to the original note and deed of trust as modified by this loan modification agreement dated March 16, 2010.

[2] The Complaint states that the Debtor received the Special Forbearance Agreement on or about July 24, 2012, in response to a Qualified Written Request that Debtor's counsel sent to Wells Fargo on July 2, 2012. A letter from Sara Esser, Executive Mortgage Specialist, Office of Executive Complaints for Wells Fargo, dated October 3, 2012, stated:

> Our records indicate we received correspondence from your [Debtor's counsel's] office on July 6, 2012. We can confirm the correspondence requested "all copies of forbearance agreements and loan modifications executed by or offered to Ms. Pamela Rutledge during the course of the loan." Due to an inadvertent oversight, a copy of the aforementioned [forbearance] Agreement was not provided in our July 24, 2012, response sent to your office.

Pl.'s Compl. Ex. 15.

In May 2011, a Wells Fargo Home Preservation Specialist, Scott Horton, led the Debtor to believe that she would be offered another loan modification.  In reliance on Horton's statements, the Debtor made two payments of $594.15 for principal, interest, escrow of taxes, and insurance premiums, and then two payments of $594.00 from June 2011 through September 2011. During this four-month period, the Debtor was awaiting anticipated information on loss mitigation options to lower her monthly payment and allow her to remain in her home.

In October 2011, the Debtor's home sustained soot damage, and she subsequently received a check from Farm Bureau, her insurance carrier, in the amount of $3,578.16.  Prior to receiving the check, the Debtor paid for and made all the repairs herself. Because the check from Farm Bureau was made payable to both the Debtor and Wells Fargo, the Debtor endorsed the check and sent it to Wells Fargo. Wells Fargo deposited the check in a special escrow account. Wells Fargo confirmed in a letter dated October 3, 2012, that Wells Fargo's representative completed the inspection of the home on January 16, 2012, and all repairs were made at that time.  Yet, in a letter dated March 22, 2012, Wells Fargo asked the Debtor for an update on the repairs.  The Debtor stated in the Complaint that she asked Wells Fargo numerous times to apply the insurance proceeds to her delinquency.  The applicable section of the Deed of Trust, Uniform Covenant 4, provides:

> All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to the prepayment of principal, or (b) to the restoration or repair of the damaged Property.

A letter from Anita Goff, Written Customer Contact for Wells Fargo, dated September 27, 2012, informed the Debtor's counsel that proceeds from a property loss check "cannot be used to bring an account current." [Pl.'s Compl. Ex. 11.]  Wells Fargo personnel repeatedly told

both the Debtor and her counsel that the proceeds from the property loss check could not be used to bring the Debtor's account current.  However, on October 3, 2012, Debtor's counsel received a letter from Sara Esser, Executive Mortgage Specialist, Office of Executive Complaints for Wells Fargo, stating that the proceeds *could* in fact be applied to her account. According to Ms. Esser:

> Since Wells Fargo Home Mortgage confirmed the repairs on the property were complete[sic] Ms. Rutledge may request that the insurance proceeds are applied toward bringing her loan current.  Please be advised that she would need to provide any additional funds needed to bring the loan current.  Wells Fargo Home Mortgage is also willing to release the funds to Ms. Rutledge once she signs and returns the enclosed Hold Harmless Agreement.

Pl.'s Compl. Ex. 15.

The Debtor spoke with someone at Wells Fargo in May 2011 regarding a request for additional payment assistance.  The letter from Sara Esser stated that on May 25, 2011, Wells Fargo received portions of the necessary financial documentation.  Ms. Esser's letter also stated that Wells Fargo "had not received a complete financial package" from the Debtor despite numerous requests, and therefore, on January 25, 2012, "the loan was removed from review and the enclosed letter confirming this decision was sent to Ms. Rutledge."

In the January 25, 2012 letter, Wells Fargo informed the Debtor that after review and exploration of a number of mortgage assistance options, she did not qualify for "the program" because the bank had been unable to reach her to discuss the situation, and could therefore not review her application for mortgage assistance. The Debtor alleges in her Complaint that she had been providing Wells Fargo with information related to her finances as early as May 16, 2011.

The last payment from the Debtor to Wells Fargo was $594.00 in September 2011.  By December 2011, the Debtor was approximately nine months past due on her mortgage payments according to Wells Fargo's loan activity statement.  Wells Fargo began the foreclosure process

on the Debtor's home in late May 2012.  The Notice of Hearing on Foreclosure Deed of Trust was filed on June 4, 2012, and the Debtor retained counsel shortly thereafter to "defend the foreclosure action and obtain a home retention solution" from Wells Fargo.  The Notice of Hearing on Foreclosure Deed of Trust stated the holder of the note secured by the deed of trust as "Wells Fargo Bank, N.A."

Paragraph 9(d) of the Deed of Trust is relevant to the foreclosure process for an FHA-insured mortgage.  It provides:

> **(d) Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Debtor's counsel contacted Wells Fargo in August 2012 to consider the Debtor for a loss mitigation option under HUD Mortgagee Letter 2009-23, applicable to FHA insured mortgages, commonly known as the "FHA-Home Affordable Modification Program" or "FHA-HAMP." Wells Fargo denied the request with regard to a FHA-HAMP modification because the Debtor was more than twelve months past due on her mortgage.  If insurance proceeds had been applied to the loan, the Debtor's loan would have been approximately nine months past due.

The Debtor states that Wells Fargo then improperly discounted the rental income from her tenant in its calculations to determine eligibility for other loss mitigation programs.  In the letter dated October 3, 2012, Sara Esser explained that the guidelines for a retention review (other than HAMP) resulted in a discount of the monthly rental income the Debtor received from her tenant from $400.00 to $147.46.  This discount had the effect of showing a cash flow deficit of $110.36 in the Debtor's monthly budgeted income and expenses, and therefore resulted in a rejection of other loan modification programs by Wells Fargo.

The Complaint also states that Wells Fargo failed to set up a face-to-face meeting with the Debtor prior to initiating foreclosure proceedings in contravention of HUD guidelines.

The Debtor suffered damages proximately caused by the conduct of Wells Fargo during the period from June 2009 to November 2012, including but not limited to, collection charges, inspection fees, late fees, foreclosure fees, other fees charged to her loan account, damage to her credit rating, damages for her inconvenience, and mental anguish.

On November 1, 2012, Debtor's counsel filed a written complaint with HUD's FHA Resource Center alleging that Wells Fargo did not follow the FHA servicing guidelines in servicing her FHA loan and evaluating her for a potential loan modification.  A HUD representative responded on November 5, 2012, stating that the Debtor needed to work directly with Wells Fargo to resolve the issues.

The Debtor filed her Chapter 13 petition on November 14, 2012.  Seven days later, the Resignation of Substitute Trustee in the foreclosure proceeding was filed with the Office of the Register of Deeds of Forsyth County.

Wells Fargo filed a Proof of Claim (the "Claim") in the Debtor's bankruptcy case on March 1, 2013, with a total amount of $94,521.88 claimed as of the petition date.  This included an arrearage and other charges totaling $15,710.52.  The amount of prepetition fees, expenses, and charges in the mortgage proof of claim attachment totaled $2,138.55.  Part 3 of the Proof of Claim attachment, Statement of Amount Necessary to Cure Default as of the Petition Date, included three payments due from December 1, 2012 to February 1, 2013, which were due post-petition.  In addition, it reflects that the date the last payment was received by the Creditor was September 15, 2012. The Loan Activity Statement attached to the Complaint as Exhibit 9 shows the last payment date as September 15, 2011.  There is no mention in the Proof of Claim of the

$3,578.16 in insurance loss proceeds held in a special escrow account, although there is a place on part 3 of the Proof of Claim attachment to "Subtract amounts for which debtor is entitled to a refund."

The Debtor initiated the adversary proceeding on May 22, 2013. In the Complaint, the Debtor alleges the following ten causes of action against Wells Fargo: (1) Objection to Proof of Claim against Wells Fargo; (2) Breach of Contract; (3) Breach of the Duty of Good Faith and Fair Dealing; (4) Breach of Fiduciary Duty; (5) Constructive Fraud; (6) Violation of N.C. Gen. Stat. §75-1.1 Unfair and Deceptive Acts and Practices; (7) Fraud; (8) Negligent Misrepresentation; (9) Violation of N.C. Gen Stat. §75-50 et.seq. Unfair Debt Collection; and (10) Alternative Claims in Defense and Recoupment Against any and all Defendants.

## II. LEGAL ANALYSIS

**Standard of Review**

Rule 7012 of the Rules of Bankruptcy Procedure incorporates Federal Rule of Civil Procedure 12(b)–(i). Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiffs may proceed into the litigation process only when their complaints are "justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009).

The standards set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) with regard to a motion to dismiss pursuant to Rule 12(b)(6) guide the Court in determining whether or not to dismiss the counts of the Debtor's Complaint. Thus, each count of the Complaint will survive the Motion to Dismiss only if the Complaint contains "sufficient factual matter, accepted as true, 'to state a claim for relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The United

States Supreme Court set forth this plausibility standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citations omitted).

To determine plausibility, all facts set forth in the Complaint are taken as true. However,

"legal conclusions, elements of a cause of action, and bare assertions devoid of further factual

enhancement" will not constitute well-pled facts necessary to withstand a motion to dismiss.

*Nemet Chevrolet, Ltd. v. Consumerafffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

In analyzing the counts of the Complaint in light of the Motion to Dismiss, the Court will

determine if the Debtor has "nudged [her] claims across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570. The Court will also consider documents incorporated into the

Complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## **Discussion**

In the Complaint, the Debtor asserts a broad range of state law claims stemming from

Wells Fargo's conduct as it relates to the Note and Deed of Trust. Wells Fargo contends that all

of the Debtor's claims are wholly reliant on various federal regulations, including the FHA-

HAMP program, and because those regulations do not provide for a private right of action, all

claims must necessarily be dismissed. The interplay between state law causes of action and

federal regulations related to the providing and servicing of mortgages has been the subject of numerous opinions within the last few years.

In *Wigod v. Wells Fargo Bank, N.A.*, the Seventh Circuit affirmed in part and reversed in part a district court dismissal of a complaint alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and Illinois common-law contract and tort law in relation to her mortgage servicer's refusal to modify her loan under the federal Home Affordable Mortgage Program ("HAMP"). 673 F.3d 547 (7th Cir. 2012).[3] The district court dismissed the complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Seventh Circuit examined the allegations in the complaint in light of Illinois state law, reversed the district court on four counts including breach of contract, promissory estoppel, fraudulent misrepresentation, and violation of the ICFA, and allowed the claims to survive the defendant's motion to dismiss.  After an extensive analysis of more than eighty federal cases in which mortgagors brought HAMP-related claims, *Wigod* divided the legal theories relied on by the plaintiffs in those cases into three groups.

First, with regard to the homeowners seeking to assert rights arising under HAMP itself, courts have rejected these claims "because HAMP does not create a private federal right of action for borrowers against servicers." *Id.* at 559 n.4.  In the second group of cases, plaintiffs claimed to be third-party beneficiaries of their loan servicers' Servicer Participation Agreements ("SPAs") with the United States to refinance mortgages and help their mortgagors avoid foreclosure under the HAMP guidelines.  As the Seventh Circuit noted, after the Supreme Court decision in *Astra USA, Inc. v. Santa Clara County*, -- U.S. --, 131 S. Ct. 1342, 179 L.Ed.2d 457

---

[3] The *Wigod* opinion provides a comprehensive review of case law on the subject of whether a mortgagee's refusal to modify a loan constitutes a HAMP violation.

(2011),[4]   district courts have correctly applied the *Astra* decision to dismiss claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs.  *Id.*  The third group of cases analyzes claims based on contract, tort, and state consumer fraud statutes.  In *Wigod*, the Circuit Court found the case to be included in the third group, basing the plaintiff's claims on the trial period plan she entered into with Wells Fargo as a prerequisite to a formal loan modification under HAMP as a state law breach of contract.  *Id.*

Similarly, in *Spaulding v. Wells Fargo Bank, N.A.*, the Fourth Circuit analyzed the claims of the plaintiffs' complaint alleging breach of an implied in fact agreement, negligence, violations of the Maryland Consumer Protection Act, negligent misrepresentation, and common law fraud based on the failure of Wells Fargo to follow through with a loan modification agreement under HAMP guidelines. 714 F.3d 769 (4th Cir. 2013).  In *Spaulding*, the plaintiffs had not reached a point of entering into a trial period plan with Wells Fargo.  The Fourth Circuit looked at Maryland state law in affirming the district court's dismissal of all counts of the plaintiffs' complaint. *Id.*

Two recent district court decisions involving state law claims in connection with FHA-insured mortgages with FHA-HAMP[5] aspects have declined to keep the case for its federal law questions and remanded the cases to state court.  In *Sutherland v. Wells Fargo Bank, N.A.*, the court, in granting the motion to remand, stated that "[a]lthough plaintiff's complaint is replete with references to various federal regulations, mortgagee letters, and the like, when one examines the legal theories pertaining to each claim, exclusive resort to federal law is not

---

[4] The Supreme Court held that health care facilities covered by § 340B of the Public Health Services Act could not sue as third-party beneficiaries of drug price-ceiling contracts between pharmaceutical manufacturers and the government because Congress did not create a private right of action under such Act.

[5] A distinction should be made between FHA-HAMP and HAMP loan modifications, both of which were promulgated as a result of the Emergency Economic Stabilization Act in October 2008.  FHA-HAMP applies to mortgages insured by the FHA, like the Debtor's, whereas HAMP applies to mortgages serviced by participating companies.  *Sutherland v. Wells Fargo Bank, N.A.*, No. 7:13-CV-00072-BR, 2013 WL 5817386, at *4 n.5 (E.D.N.C. Oct. 29, 2013).

required." No. 7:13-CV-00072-BR, 2013 WL 5817386, at *4 (E.D.N.C. Oct. 29, 2013). Thus, Wells Fargo's motion to dismiss the complaint in *Sutherland*, with substantially the same counts as the Debtor's complaint, was denied as moot.  In *Simpkins v. Suntrust Mortgage, Inc.*, the court also granted the plaintiff's motion to remand for lack of federal question jurisdiction, when the plaintiff's state law claims referenced HAMP procedures and guidelines. No. 2:12cv264, 2013 WL 1966904 (E.D. Va. May 7, 2013).

The Court evaluates all remaining counts of the Complaint with reference to applicable North Carolina law to determine if they will survive the Motion to Dismiss.  In this case, the conduct of Wells Fargo in servicing the Debtor's loan is at issue in the Complaint, as well as allegations of a failure to follow FHA-HAMP guidelines to allow the Debtor to obtain a loan modification.

Breach of Contract (Count II)

A breach of contract action under North Carolina law involves the existence of a valid contract and breach of the terms of that contract. *Sanders v. State Pers. Comm'n*, 677 S.E.2d 182, 187-88 (N.C. Ct. App. 2009); *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). The Note and Deed of Trust executed by the Debtor in this case constitute contracts pursuant to North Carolina law.  The question for the Court is whether Wells Fargo, in its dealings with the Debtor with respect to the loan evidenced by the Note and Deed of Trust, committed any breach or misperformance of any of the provisions of those contracts.

The Debtor alleges in the Complaint that Wells Fargo held the insurance proceeds in an escrow account for ten months without applying the proceeds to the indebtedness, after the repairs had been inspected and signed off as complete, in violation of the terms of the Deed of

Trust.[6]  In addition, Wells Fargo gave the Debtor no explanation of a procedure for applying the proceeds to the indebtedness secured by the Deed of Trust during that time.  In December 2011, the insurance proceeds check was endorsed and sent to Wells Fargo; on January 16, 2012, Wells Fargo's vendor finished his inspection, confirming the completion of the repairs.[7]  It wasn't until Sara Esser's letter of October 3, 2012, that the Debtor found out how to apply or access the insurance proceeds.  During this almost ten-month period, employees of Wells Fargo told the Debtor and her counsel that such insurance proceeds could not be applied to the loan.  If the insurance proceeds check had been applied to the loan balance in January 2012, the possibilities for the Debtor with regard to the loss mitigation options in August 2012 in connection with her loan may well have been expanded.  Whether Wells Fargo breached its contract with the Debtor when it failed to apply the insurance proceeds to the indebtedness is a well-pled breach of contract issue; therefore, the Motion to Dismiss as to Count II is denied.

Other breach of contract allegations in the Complaint involve issues with regard to the failure of Wells Fargo and its personnel to follow through with loss mitigation programs during the time the Debtor was in default with her loan as well as the initiation of a foreclosure action before pursuing loss mitigation options.  There are a number of cases that address a motion to dismiss a breach of contract claim in connection with the failure to provide a loan modification in connection with FHA-HAMP or HAMP, with varying results.

Some cases, such as the Debtor's, allege that a lender has breached the terms of a mortgage by starting on a foreclosure process without pursuing loss mitigation options as

---

[6] The language in Uniform Covenant 4 of the Deed of Trust states that the insurance proceeds may be applied by the Lender, at its option, either (a) to the reduction of the indebtedness . . . . or (b) to the restoration or repair of the damaged Property.  Here, since the Debtor had made and Wells Fargo's vendor had signed off on the repairs, only option (a) remained applicable: to apply the insurance proceeds to the reduction of the indebtedness.

[7] Despite the January 16, 2012 confirmation to Wells Fargo that repairs were complete, the Debtor received a letter dated March 22, 2012 from Wells Fargo asking for an update as to the status and progress of the repairs. Pl.'s Compl. Ex. 16.

required by paragraph 9(d) of the FHA-insured mortgage loan.  In *Dixon v. Wells Fargo Bank, N.A.*, the court granted the motion to dismiss the breach of contract claim, explaining that "[t]his Court is not inclined to permit Plaintiffs to merely restate or redress their claim based on a violation of HUD regulations, which otherwise is clearly foreclosed, as a breach of contract claim based on paragraph 9(d) of the mortgage agreement." No. 12-10174, 2012 WL 4450502, at *8 (E.D. Mich. Sept. 25, 2012). In the *Dixon* case, the plaintiffs filed their lawsuit on the last day of the redemption period following the foreclosure sale of their home. Under Michigan law, filing a lawsuit does not toll the redemption period and, therefore, Wells Fargo became vested in the property absent a clear showing of fraud or irregularity in the foreclosure proceedings. *Id.*

In *Christenson v. Citimortgage, Inc.*, the district court discussed the "minority position" that HUD regulations become "enforceable by a private cause of action if they are incorporated into a mortgagor's loan documents." No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013). The court, however, then took the "majority position" that "compliance with the HUD regulations is a condition which must occur prior to the lender being able to accelerate and foreclose the debt and that the borrower may use any failure to comply with the regulations 'as a shield in the subsequent foreclosure case.'" *Id.* at *7 (quoting *BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028, 1035 (Ohio Ct. App. 2013)).  The court dismissed the breach of contract claim against Citimortgage, stating the failure to follow HUD regulations could only be used as an affirmative defense to the foreclosure, and not as a basis for a breach of contract claim.  *Id.*

The case of *Shelton v. Wells Fargo Bank, N.A.*, is often cited for the opposite view that the violations of HUD regulations could be a breach of the deed of trust and a violation of the duty of good faith and fair dealing in the contract between the borrower and lender due to the

14

language in paragraph 9(d) of the FHA-insured deed of trust. 481 B.R. 22 (Bankr. W.D. Mo. 2012). In *Shelton*, the bankruptcy court found that while HUD regulations do not create a private cause of action, the debtor sufficiently pled the elements for breach of contract with regard to Wells Fargo's failure to perform the obligation in paragraph 9 of the deed of trust to withstand a motion to dismiss. *Id.* at 30.

Similarly, in *Silveira v. Wells Fargo Bank, N.A.* (*In re Silveira*), a breach of contract claim survived Wells Fargo's motion to dismiss where the debtors alleged failure by the lender to follow HUD regulations prior to accelerating their loan, also in accordance with paragraph 9 of the FHA-insured mortgage. Ch. 13 Case No. 11-44812-MSH, Adv. No. 12-4036, 2013 WL 1867472 (Bankr. D. Mass. May 3, 2013). In addition, the propriety of incorporating government regulations in a federally insured mortgage document is not limited to HUD regulations.[8] Therefore, it is appropriate for the Court to look at HUD regulations in dealing with FHA-insured mortgage loans.[9]

Many of the cases which dismiss a debtor's breach of contract claim against a lender for failure to follow HUD loss mitigation program guidelines in the process of foreclosing on a residence do not have a fact pattern like the Debtor's case where Wells Fargo has failed to credit funds to the balance of the loan in dispute. The factual allegations supporting the breach of

---

[8] In *Ranson v. Bank of America, N.A.*, the court allowed a breach of contract claim to survive a motion to dismiss; this claim was based on the lender's failure to follow VA regulations regarding loss mitigation procedures for a mortgage loan in default, thus incorporating limitations set by VA regulations into the mortgage. No. 3:12-5616, 2013 WL 1077093 (S.D. W. Va. Mar. 14, 2013).

[9] In *In re Ruiz*, the court, in determining allowable charges in a lender's proof of claim, stated:

> Because the claim involves an FHA-insured mortgage, the question of what fees and costs may be charged is not limited to the parties' agreement or otherwise applicable state law. The Secretary (of HUD) is authorized and directed to make rules and regulations dealing with federally-insured mortgages. *See* 12 U.S.C. § 1715b. Where HUD rules or regulations are incorporated into an insured mortgage, they are binding upon both the mortgagor and mortgagee.

501 B.R. 76, 79 (Bankr. E.D. Pa. 2013).

contract claim in this case are sufficient to survive the Motion to Dismiss.  The Motion to Dismiss with respect to Count II is denied.

Breach of the Duty of Good Faith and Fair Dealing (Count III)

With regard to the Debtor's claim for breach of the duty of good faith and fair dealing, under North Carolina law, "'[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'"  *Sunset Beach Dev., LLC v. AMEC, Inc.*, 675 S.E.2d 46, 57 (N.C. Ct. App. 2009) (quoting *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985)). Wells Fargo's contractual obligations with the Debtor as a result of the Note and Deed of Trust include a duty to service the loan responsibly and with competent personnel.  *Wigod*, 673 F.3d at 568. The Debtor alleges, in addition to the common law breach of the duty of good faith and fair dealing, violation of three North Carolina statutes: (1) N.C. Gen. Stat. § 25-1-304, Obligation of Good Faith; (2) N.C. Gen. Stat. § 53-244.110 Mortgagor servicer duties (act with reasonable skill, care, and diligence); and (3) N.C. Gen. Stat. § 53-244.111 Prohibited Acts (. . . To engage in any transaction, practice, or course of business that is not in good faith or fair dealing . . . in connection with the . . . servicing of . . . any mortgage loan.).

Both *Robinson v. Deutsche Bank Nat'l Trust Co.*, and *Hinson v. Countrywide Home Loan, Inc.* (*In re Hinson*), dealt with HAMP issues with regard to loan modifications. No. 5:12-CV-590-F, 2013 WL 1452933 (E.D.N.C. Apr. 9, 2013); 481 B.R. 364 (Bankr. E.D.N.C. 2012). These courts each found plausible sets of facts to show that an implied duty of good faith and fair dealing existed in connection with the original deed of trust and that duty was breached in the actions of the lender leading up to foreclosure. *Robinson*, 2013 WL 14529323 (holding that plaintiff had sufficiently alleged facts that defendant did not act in a commercially reasonable

manner and declining to rule as to whether evidence of HAMP violations were relevant to plaintiff's breach of duty of good faith and fair dealing claim); *Hinson*, 481 B.R. 364 (finding duties imposed by HAMP servicer participation agreement applied during the time period when the plaintiffs were seeking a HAMP modification and served as further evidence of the defendants' lack of good faith and fair dealing under their existing contract with the plaintiffs); s*ee also Koontz v. Wells Fargo, N.A.*, No. 2:10-cv-00864, 2011 WL 1297519 (S.D. W.Va. Mar. 31, 2011).

Without reaching any of the Debtor's allegations with regard to her treatment by Wells Fargo personnel in connection with loan modification programs under FHA-HAMP, other allegations with regard to a lack of reasonable care in the original mortgage loan servicing have been set forth in the Complaint. These allegations include: (1) the wrong amount to bring the Debtor's loan current in June 2009; (2) lack of full information about the Special Forbearance Agreement in November 2010; (3) miscommunication over the completion of repairs to the Debtor's home (January 2012 signed off by Wells Fargo's representative; letter of March 22, 2012, asking Debtor for repair update); and (4) conflicting communication from Wells Fargo employees regarding the application of insurance proceeds to the indebtedness. These factual allegations, taken as true, allow the Debtor's claim for breach of the duty of good faith and fair dealing to withstand the Motion to Dismiss. The Court denies the Motion to Dismiss with respect to Count III.

Breach of Fiduciary Duty and Constructive Fraud (Counts IV and V)

In the Debtor's fourth and fifth claims, she alleges that Wells Fargo is liable for breach of fiduciary duty and constructive fraud. Each cause of action is a separate claim under North Carolina law, although the elements of existence of a fiduciary duty and breach of that duty are

the same in both causes of action.  In addition, "the primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself."  *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 156 (N.C. Ct. App. 2004).  The issue for the Debtor with regard to these two causes of action is whether a fiduciary relationship existed between the Debtor and Wells Fargo in connection with their borrower/lender or mortgagor/mortgagee relationship.  A fiduciary relationship under North Carolina law exists when:

> [C]onfidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*Id.* at 155 (quoting *Vail v. Vail*, 63 S.E.2d 202, 206 (N.C. 1951)) (internal quotation marks omitted).

Although the circumstances under which a fiduciary relationship can be created are broad, North Carolina courts have generally precluded ordinary debtor-creditor relationships from rising to this level. *See Branch Banking and Trust Co. v. Thompson*, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992); *see also Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 671 (W.D.N.C. 2012); *Frizzell Constr. Co., Inc. v. First Citizens Bank & Trust Co.*, 759 F. Supp. 286, 291 (E.D.N.C. 1991) (stating that "[i]n North Carolina, a debtor-creditor relationship does not give rise to a fiduciary relationship").

In *Robinson*, the district court extensively analyzed the facts of that case for the constructive fraud claim at issue on the defendant's motion to dismiss. 2013 WL 1452933, at *13-17. In that situation, a mortgagor alleged breach of fiduciary duty by the mortgagee in connection with a failed loan modification pursuant to HAMP and a subsequent foreclosure.  *Id.*

The court noted that there was no indication in the facts presented that the defendant lender undertook to provide the plaintiff with a service beyond that inherent in the creditor-debtor relationship, and that the "loan modification process is 'an arm's length transaction between service[r] and borrower . . . .'" *Id.* at *16 (quoting *Wigod*, 673 F.3d at 573).

In *Dallaire v. Bank of America, N.A.*, the Court of Appeals recognized that, "while uncommon," North Carolina law may give rise to the recognition of a fiduciary relationship between lender and borrower. 738 S.E.2d 731, 735 (N.C. Ct. App. 2012). In the *Dallaire* case, the borrowers asserted that they were misled regarding the priority of their refinanced loan by Bank of America personnel; they did not receive outside advice concerning their refinancing. The court reversed summary judgment and held that in these unusual circumstances there was a question of fact as to whether or not the parties' interaction prior to signing the loan, specifically whether or not defendant sought to give legal advice to plaintiffs, gave rise to a fiduciary relationship. *Id.*

The Debtor's allegations in the Complaint in Counts IV and V relate to her interaction with Wells Fargo in the loan modification process. These allegations do not show any relationship between the Debtor and Wells Fargo different from a typical debtor-creditor relationship as the Debtor attempted to work out a loan modification. Therefore, the element of fiduciary relationship is not met under North Carolina law for breach of fiduciary duty and constructive fraud. The Motion to Dismiss is granted with respect to Counts IV and V of the Complaint.

Fraud (Count VII)

Count VII of the Complaint asserts that Wells Fargo personnel engaged in fraudulent conduct. Federal Rule of Bankruptcy Procedure 7009 incorporates Federal Rule of Civil

Procedure 9(b), which imposes a heightened pleading standard for the fraudulent conduct claim, requiring that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see* N.C. Gen. Stat. §1A-1, Rule 9(b) (describing the heightened pleading requirement for fraud). This "particularity requirement is met by alleging time, place, and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 273 S.E.2d 674, 678 (N.C. 1981). Intent and knowledge can be averred generally. *Caver v. Roberts*, 337 S.E.2d 126, 128 (N.C. Ct. App. 1985).

The elements of a civil cause of action for fraud in North Carolina are (1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party. *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 748 S.E.2d 171, 178 (N.C. Ct. App. 2013).

The element of "intent to deceive" is the most difficult to elucidate when pleading fraud. The required scienter for fraud is not present without both knowledge and an intent to deceive, manipulate, or defraud. While a reckless disregard as to the truth of a statement may be sufficient to satisfy the element of "false representation," such reckless disregard is insufficient to meet the "intent to deceive" requirement of actual fraud. *RD & J Prop. v. Lauralea-Dilton Enter., LLC*, 600 S.E.2d 492, 498-99 (N.C. Ct. App. 2004). Fraudulent intent may be shown by presenting evidence of motive on the part of the perpetrator.[10] *Latta v. Rainey*, 689 S.E.2d 898, 909 (N.C. Ct. App. 2010). The requirement of "does in fact deceive" means a complaint claiming

---

[10] The Debtor alleges in the Complaint that because her loan is an FHA-insured loan, Wells Fargo stands to receive full or near-full reimbursement from the federal government for the fees, expenses, accrued interest, and unpaid principal balance remaining upon the completion of the foreclosure of her home. This pecuniary benefit provides the motivation to avoid a loan modification with the Debtor under FHA-HAMP or other HUD-FHA loss mitigation options.

fraud pursuant to North Carolina law must allege reliance on the misrepresentation to the plaintiff's detriment and damages proximately flowing from such reliance, with particularity. *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990). The reliance must be reasonable. *John v. Robbins*, 764 F. Supp. 379, 384 (M.D.N.C. 1991). In *Hudson-Cole Development Corporation v. Beemer*, the North Carolina Court of Appeals stated:

> . . . [W]hen a party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence. Moreover, where the facts are insufficient as a matter of law to constitute reasonable reliance on the part of the complaining party, the complaint is properly dismissed under Rule 129(b)(6).

511 S.E.2d 309 (N.C. Ct. App. 1999) (citations omitted).

While the facts generally alleged in the Complaint span over a large time period and relate to numerous communications between the Debtor and Wells Fargo, the misrepresentations that the Debtor specifically points to in Count VII as fraudulent are limited. The first misrepresentation set forth in Count VII is "During communications in or about August 2012, Wells Fargo misrepresented to Plaintiff, through counsel, material facts concerning Wells Fargo's basis for denying assistance to Plaintiff under FHA-HAMP and other FHA loss mitigation programs." The issue with this misrepresentation, when considered in light of the elements of actual fraud under North Carolina law, is the lack of reliance by the Debtor to her detriment. At this point, August 2012, the Debtor and her counsel were in the process of working on a loan modification, but she was not relying on misrepresentations by Wells Fargo personnel and damages were not proximately flowing from such reliance. This same lack of reliance is applicable to the allegation set forth in ¶ 195(d) of the Complaint, "selective and discriminatory altering of Plaintiff's income and expense information," and results in the failure of these allegations to plead all elements of actual fraud.

With regard to the concealment of a material fact from the Debtor in June 2009 of the true and correct amount necessary to bring her loan current, this misrepresentation is outside the three year statute of limitation period for the actual fraud claim.[11]

The last two allegations in the actual fraud count of the Complaint involve the Special Forbearance Agreement and the qualification and eligibility of the Debtor for a loan modification under FHA-HAMP.  With regard to these allegations, the Court cannot find that the facts pled are sufficient to nudge a count of actual fraud from possible to plausible.  Taking the facts surrounding the Special Forbearance Agreement, for example, the Court cannot find the allegation that Wells Fargo personnel acted with the necessary scienter as plausible.  It is necessary for the Court to find more than a "sheer possibility" that Wells Fargo personnel acted with actual intent to defraud to allow Count VII to remain in the Complaint.  The "sheer possibility" alone is not sufficient for a claim to survive a motion to dismiss.  *See Iqbal* 556 U.S. at 678 (describing this standard). Therefore, Count VII is dismissed.

Negligent Misrepresentation (Count VIII)

Under North Carolina law, the tort of negligent misrepresentation requires that the plaintiff: (1) justifiably rely; (2) to his/her detriment; (3) on information prepared without reasonable care; (4) by an individual owing the plaintiff a duty of care. *Angell v. Kelly*, 336 F. Supp. 2d 540, 549 (M.D.N.C. 2004) (internal quotation marks omitted).  The term "duty of care" is defined as a legal obligation that requires a party to conform his conduct with a specific standard of reasonableness. *Oberlin Capital, L.P. v. Slavin*, 554 S.E.2d 840, 846 (N.C. Ct. App. 2001). As discussed above, there is no support for an allegation that the Debtor and Wells Fargo

---

[11] This misrepresentation by Wells Fargo personnel in June 2009 does not constitute a "continuing violation" for statute of limitations purposes; the misrepresentation resulted in continual ill effects from an original violation, but not continual unlawful acts.  *Landmar, LLC v. Wells Fargo Bank, N.A.*, No. 5:11-cv-00097-MOC, 2013 WL 5674880, at *7 (W.D.N.C. Oct. 17, 2013) (finding that continual monthly invoices cannot be considered as anything other than "an ill effect of the original wrong" and will not toll the statute of limitations for fraud).

had anything greater than a typical debtor-creditor, borrower-lender relationship. Therefore, the duty of care owing the Debtor by Wells Fargo is one owed by a lender or mortgage servicer to a borrower, arising out of their contractual relationship, nothing more. *See Wagner v. Branch Banking and Trust Co.*, No. COA05-1334, 2006 WL 2528495, at *2 (N.C. Ct. App. Sept. 5, 2006). The law imposes upon the parties an obligation to perform the contract with ordinary care. *Dallaire*, 738 S.E.2d at 736. A claim alleging negligent misrepresentation must be brought within three years of discovery of the facts constituting the negligence. N.C. Gen. Stat. § 1-52.

The Debtor alleges that she relied on Wells Fargo's representations and information when she tendered $4,108.92 in June 2009 to bring her loan current at that time. This allegation is outside the statute of limitations for negligent misrepresentation. The Debtor further alleges that she accepted the six-month Special Forbearance Agreement only because she assumed that her loan would be current at the end of the six months. [Pl.'s Compl. ¶ 67]. A claim for negligent misrepresentation requires an affirmative misrepresentation under North Carolina law, not just a negligent omission of information. *See Breeden v. Richmond Cmty. College,* 171 F.R.D. 189, 202-03 (M.D.N.C. 1997); *Harrold v. Dowd*, 561 S.E.2d 914, 919 (N.C. Ct. App. 2002) (stating that "fail[ure] to provide," "fail[ure] to advise," and "fail[ure] to investigate" are insufficient actions to support a claim for negligent misrepresentation). Therefore, Wells Fargo's failure to inform the Debtor that her loan would not be current at the end of the forbearance agreement period is not a basis for a negligent misrepresentation claim.

Lastly, the Debtor alleges that Wells Fargo's representations led "Plaintiff to believe that Wells Fargo would be offering her another modification in or about May 2011," [Pl.'s Compl. ¶ 212(c).] and, therefore, to provide "personal and financial information to Wells Fargo on numerous occasions." [Pl.'s Compl. ¶ 212(d).] As the court stated in *Robinson*:

> In this case, there was no contract to process the loan modification application, and Plaintiff does not allege that Defendants failed to perform any duty specified in the loan documents. Accordingly, despite Plaintiff's arguments to the contrary, the allegations do not support the claim that Defendant Homeward undertook to render some service that is not inherent in the creditor-debtor relationship. To the extent Plaintiff argues that Defendants owed her an extra-contractual legal duty to process, manage, or monitor the loan modification applications or foreclosure, the court finds that Defendants owed Plaintiff no such legal duty to be held liable for negligence under North Carolina law.

2013 WL 1452933, at *18. Similarly, in the present case, there was no extra-contractual legal duty of care with regard to the loan modification process.

Analyzing the Complaint to determine the possible negligent misrepresentations to the Debtor by Wells Fargo from June 2009 to November 2012 in connection with the Note and Deed of Trust, various elements of the negligent misrepresentation claim are missing. The elements for a cause of action for negligent misrepresentation within the statute of limitations period do not exist in the Debtor's situation. Therefore, the Motion to Dismiss with respect to Count VIII is granted.

Violation of N.C. General Statute § 75-1.1 (Count VI)

North Carolina's "unfair trade practices" statute, section 75-1.1 of the General Statutes, declares "unfair methods of competition" and "unfair or deceptive acts or practices" unlawful; the business tort of unfair or deceptive acts pursuant to this section is the relevant focus of Count VI of the Complaint. In accordance with N.C. Gen. Stat. § 75-16.2, the statute of limitation for a violation of Title 75 is four years. Count VI contains sixteen allegations of violation of § 75-1.1; eleven allegations relate to the wrongful conduct of Wells Fargo personnel in connection with the Debtor's eligibility for a loan modification under FHA-HAMP or other loss mitigation efforts, and the remainder of the allegations are contractual in nature, relating to wrongful

conduct in connection with the Note and Deed of Trust.  Four of the sixteen allegations relate to misrepresentations.

To state a claim under § 75-1.1, the Debtor must allege sufficient facts to show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.  *Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 476, 481-82 (N.C. Ct. App. 1991).  The Debtor need not show "fraud, bad faith, deliberate acts of deception or actual deception, but must show that the acts had a tendency or capacity to mislead or created the likelihood of deception."  *Id.* at 482; *see Lawyers Title Ins. Co. v. Chesson* (*In re Chesson*), Ch. 7 Case No. B-09-81328C-7, Adv. No. 09-09064, 2012 WL 4794148, at *6 (Bankr. M.D.N.C. Oct. 9, 2012) ("Unlike the common law fraud claim . . . intent in making these false statements is irrelevant.").  A breach of contract claim, such as a disagreement with a loan servicer over terms and payments of a mortgage, must also allege egregious or aggravating circumstances to constitute an unfair or deceptive act under § 75-1.1.  *See Harty v. Underhill*, 710 S.E.2d 327, 332 (N.C. Ct. App. 2011) (finding that plaintiffs' claim against loan servicer in connection with a forbearance agreement was a basic breach of contract claim which, standing alone, could not form the basis of an UDP claim).

In the Debtor's case, the misrepresentation allegations of violation of § 75-1.1 falter with the element of "detrimental reliance," as analyzed recently by the North Carolina Supreme Court. *See Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 224 (N.C. 2013).  Explaining the two components of detrimental reliance, actual reliance and reasonable reliance, the Court stated:

> In the context of a misrepresentation claim brought under section 75-1.1, actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether. The second element, reasonableness, is most succinctly defined in the negative:

25

> "Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate."

*Id.* at 227 (citations omitted).

After careful review of the Complaint, the Court finds that the Debtor does not meet the "actual reliance causing injury" component of her unfair or deceptive act or practice claim with regard to the insurance proceeds or loan modification misrepresentations.  In addition, the Debtor does not meet the reasonable reliance component of such claim with the June 2009 payment or the Special Forbearance Agreement misrepresentations.

The allegations of violation of § 75-1.1 that do not refer to misrepresentations, refer to the actions of Wells Fargo personnel in dealing with the Debtor with regard to a loan modification agreement or other loss mitigation efforts.  The definition of "unfair" for purposes of § 75-1.1 has been established for many years.   The North Carolina Supreme Court, interpreting this statute in 1981, held:

> Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace.  A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

*Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981) (citations omitted); *see Patterson v. Falgstar Bank, FSB*, No. 3:12-cv-00707-MOC-DCK, 2013 WL 5217616, at *8 (W.D.N.C. Sept. 17, 2013) (stating that it is unlikely that an independent tort can arise from a contract such as to constitute unfair and deceptive practices); *Metro. Group, Inc. v. Meridian Indus., Inc.*, 869 F. Supp. 2d 692 (W.D.N.C. 2012) (reiterating the *Marshall* standard); *Branch Banking & Trust Co.*, 418 S.E.2d at 700 (distinguishing between the definitions of "unfair" and "deceptive," and holding that a mere breach of contract is insufficient to sustain an action under § 75-1.1).

The facts of the Complaint and the exhibits attached thereto are replete with instances of poor communication between servicer and borrower, confusion of Wells Fargo personnel with regard to the application of insurance proceeds to the debt, and the supply of erroneous information to the Debtor. These instances do not rise to the level of "unfair" acts as defined by North Carolina law or constitute egregious or aggravating circumstances with regard to the breach of contract claims. As previously stated, the Debtor did not show detrimental reliance on the misrepresentations in accordance with the standards set forth recently in *Bumpers*. Accordingly, the Court cannot find that the actions of Wells Fargo personnel are sufficient to constitute a plausible claim upon which relief may be granted under § 75-1.1. The Motion to Dismiss is granted with respect to Count VI.

Violation of N.C. General Statute § 75-50 et seq. (Count IX)

Pursuant to the North Carolina Debt Collect Act ("NCDCA"), a plaintiff must plausibly allege three threshold requirements. *See* N.C. Gen. Stat. §§ 75-50 to 75-56; *see also Glenn v. FNF Servicing, Inc.*, No. 5:12-CV-703-D, 2013 WL 4095524 (E.D.N.C. Aug. 13, 2013) (reviewing claims for violations of the North Carolina Unfair and Deceptive Acts and Practices Act and the NCDCA by the mortgage lender in light of a Rule 12(b)(6) motion to dismiss). The first requirement is a consumer who incurred a debt or alleged debt for personal, family, household, or agricultural purposes. N.C. Gen. Stat. § 75-50(1). When the Debtor acquired a mortgage with Wells Fargo's predecessor, she became a consumer incurring a debt for family or household purposes in accordance with the NCDCA. *Glenn*, 2013 WL 4095524, at *3. The Wells Fargo mortgage qualifies as a debt for the purposes of N.C. Gen. Stat. § 75-50(2). As a mortgage servicer or lender seeking to collect on a debt, Wells Fargo qualifies as a debt collector pursuant to N.C. Gen. Stat. § 75-50(3). The initial requirements of the NCDCA are met in this

instance.  In addition, the three standard elements of the § 75-1.1 claim must be met: an unfair or deceptive act, in or affecting commerce, proximately causing the injury that has been alleged. As previously discussed in connection with Count VI, the Section 75-1.1 claim, the Debtor has not plausibly pled detrimental reliance with regard to deceptive acts by Wells Fargo or "unfair" acts (as defined by North Carolina common law) in her Complaint. *See* N.C. Gen. Stat. § 75-54. The Motion to Dismiss with respect to Count IX is granted.

Objection to Claim of Wells Fargo (Count I)

Pursuant to Federal Rule of Bankruptcy Procedure 3007(b), a plaintiff may include an objection to claim in an adversary proceeding.  The Debtor objects to the Claim of Wells Fargo in her Complaint.  The Debtor alleges in the Complaint that Wells Fargo failed to comply with Federal Rule of Bankruptcy Procedure 3001(c)(2)(A) and (B) in that the Claim (1) does not address the $3,578.16 in insurance proceeds; (2) states the Debtor owes more than is actually due; and (3) includes fees assessed against the Debtor for the foreclosure action that was improperly commenced.   Taking the factual allegations of the Complaint as true, the Complaint states sufficient facts to make a plausible showing of entitlement to relief in the Debtor's objection to the Claim.   Therefore, the Motion to Dismiss is denied as to Count I of the Complaint.

Alternative Claims in Defense and Recoupment (Count X)

The claim of equitable recoupment, a defensive claim, has been held to be available to a debtor who is objecting to a proof of claim, along with seeking additional relief, in an adversary proceeding.  *See McClendon v. Walter Home Mortg.* (*In re McClendon*), Ch. 13 Case No. 10-04226-8-RDD, Adv. No. 10-00305-8-RDD, 2012 WL 5387677, at *3-4 (Bankr. E.D.N.C. Nov. 2, 2012) (allowing the debtors to proceed under the theory of recoupment as part of their

objection to creditor's proof of claim for relief of usury, even though the applicable statute of limitations bars the forfeiture of all interest for usury and a penalty of twice the interest paid outside the limitation period); *Salazar v. First Residential Mortg. Servs. Corp.* (*In re Salazar*), Ch. 13 Case No. 10-10165, Adv. No. 10-00101, 2011 WL 1237648, at *7-8 (Bankr. D. Md. Mar. 30, 2011) (permitting the debtors to assert recoupment for time-barred Truth in Lending Act rescission and damages claims in their objection to Wells Fargo's proof of claim).  For purposes of the Motion to Dismiss, the Debtor has asserted sufficient facts and circumstances to state a recoupment claim related to the underlying transaction, including the loan modification in March 2010, which forms the basis for Wells Fargo's Claim.  It is appropriate to allow the Debtor to assert her recoupment claim in the ongoing litigation process as a defense and objection to Wells Fargo's Claim. Therefore, with respect to Count X, the Motion to Dismiss is denied.

### III.  CONCLUSION

Based on the foregoing, an order will be entered contemporaneously with this Memorandum Opinion.

**END OF DOCUMENT**

PARTIES TO BE SERVED
13-06037

Pamela C. Rutledge
5761 Davis Rd.
Walkertown, NC 27051

Keith Clayton
Legal Aid of NC
102 West Third St. Suite 460
Winston-Salem, NC 27101

John R. Lawson
Legal Aid of NC
P.O. Box 20188
Winston-Salem, NC 27120

Julie B. Pape
One W. Fourth St.
Winston-Salem, NC 27101

Christopher W. Jones
150 Fayetteville St., Ste 2100
Raleigh, NC 27601

Kathryn L. Bringle
P.O. Box 2115
Winston-Salem, NC 27102